UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| MORAN FOODS, INC., d/b/a SAVE-A-LOT, LTD., | ) ) ) | |
| Plaintiff/ Counterclaim Defendant | ) ) ) ) ) | |
| v. | ) ) | Cause No. 3:00-CV- 227 RM |
| MID-ATLANTIC MARKET DEVELOPMENT COMPANY, LLC; MIDWEST MARKETS, LLC; ROGER V. S. CAMP; and SUSAN CAMP. | ) ) ) ) ) ) | |
| Defendants/ Counterclaimants | ) ) ) | |

OPINION AND ORDER

This case's history includes an award of partial summary judgment to Moran Foods, a jury verdict for Mid-Atlantic and Susan Camp, and an appellate reversal of that jury verdict. A motion for determination of when prejudgment interest ceased and postjudgment interest began pends.

This suit arises from Moran Foods' sale of several of its franchise Save-A-Lot grocery stores to Mid-Atlantic Market Development, Midwest Markets (an affiliate of Mid-Atlantic) and Roger and Susan Camp. These stores eventually failed and Moran Foods sued the defendants for breach of contract. Mid-Atlantic and Susan Camp counterclaimed. Mid-Atlantic argued that Moran had violated a contractual provision that required Moran Foods to furnish certain accounting services to Mid-

Atlantic. Susan Camp claimed that Moran Foods had violated the Equal Credit Opportunity Act by discriminating against her based on her marital status.

The court granted summary judgment to Moran Foods on its breach of contract, guaranty, and account claims; it denied summary judgment on Moran Foods' *quantum meruit* claim and request for damages. Moran Foods clarified its request for damages and the court awarded those damages totaling $1,297,094.30. The court further awarded Moran Foods pre-judgment interest in the amount of 22% per annum from April 3, 2000. The court denied Moran Foods' ensuing motion for entry of final judgment.

A three day jury trial was held to resolve the surviving claims. During trial, defense counsel argued that the defendants owed Moran Foods $3,006,314. The jury returned a verdict for Mid-Atlantic and Midwest on their breach of contract counterclaim for the amount requested ($3,006,314), and a verdict of $50,000 for Susan Camp on her ECOA claim. In post-trial motions, the defendants claimed entitlement to the difference between the jury award and the amount they actually owed to Moran Foods. The court rejected that argument, invoking judicial estoppel to prevent defendants from arguing that the actual damages were different from what was presented to the jury. The court held that: "no party shall take anything on the breach of contract counterclaim or on Moran's claims resolved earlier on summary judgment. Susan Camp shall recover from Moran in the amount of $21,428.57, which is 3/7 of the $50,000.00 the jury awarded her on her ECOA claim."

Both sides appealed. The defendants challenged the grant of summary judgment to Moran Foods on its breach of contract claim and also asked that Susan Camp be awarded the attorney's fees that she incurred in litigating her claim under the ECOA, plus additional relief under the Act. The court of appeals concluded that Mid-Atlantic failed to prove any amount of damages to offset against its debt to Moran Foods, and that Moran Foods infringed no right that Susan Camp had under the ECOA. The court of appeals reversed the judgment and remanded the case with instructions that a final judgment be entered for Moran Foods on all claims. This court then vacated the prior judgment and entered final judgment for Moran Foods, but no amount of damages was specified.

The parties are now before the court asking for a determination of when prejudgment interest ceased accruing and postjudgment interest began.

Moran Foods argues that prejudgment interest continues to accrue until this court enters a money judgment in its favor. Alternatively, it claims entitlement to prejudgment interest through January 31, 2005, when the court granted the defendants' motion for entry of judgment and held that the jury's verdict on the breach of contract counterclaim would be a setoff equal to the amount of Moran Foods' judgment against the defendants. Mid-Atlantic argues that prejudgment interest ceased and postjudgment interest began on April 26, 2002, when the court granted Moran Foods' summary judgment motion and fixed the amount of damages.

3

"Interest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961. This statute requires that "postjudgment interest properly runs from the date of the entry of judgment." Kaiser Aluminum & Chemical Corp. v. Bonjorno, 494 U.S. 827, 835 (1990). "Where the judgment on damages was not supported by the evidence, the damages have not been 'ascertained' in any meaningful way." Id. at 836. The courts of appeal disagree as to what constitutes "entry of judgment," and the Seventh Circuit hasn't addressed the issue at any length. It doesn't appear that any circuit has spoken to a situation such as this.

Mid-Atlantic looks to the Supreme Court's statement that damages must be "meaningfully ascertained" to support their argument that prejudgment interest stopped running when this court awarded Moran's request for damages. Mid-Atlantic further relies on Skalka v. Fernald Environmental Restoration Management Corp., 178 F.3d 414, 427-428 (6th Cir. 1999), which held that postjudgment interest began to accrue from the date on which the district court entered an initial judgment memorializing the verdicts, not the later date when the court entered a final, appealable judgment disposing of all claims. The Sixth Circuit found that 28 U.S.C. § 1961 "does not require the conclusion that any order that is not a final, appealable judgment is not a 'judgment.' Rather, the use of 'includes' and the selective use of the adjective 'final' suggests that there *can* be 'judgments' that are not 'final, appealable judgments.'" Skalka v. Fernald Environmental, 178 F.3d at 428 (emphasis in original). The Third Circuit has also

4

held that postjudgment interest can begin to accrue on a non-final judgment, as long as that judgment awards a fixed amount to the prevailing party. Skretvedt v. E.I. DuPont De Nemours, 372 F.3d 193, 217 (3rd Cir. 2004).

The majority of circuits, though, appear to interpret the post-judgment interest statute to require both a monetary amount and a final, appealable judgment. *See* MidAmerica Federal Sav. & Loan Ass'n v. Shearson/American Exp., Inc., 962 F.2d 1470, 1476 (10th Cir. 1992) ("Any available postjudgment interest began to accrue on April 22, 1991, the date the fees were meaningfully ascertained and included in a final, appealable judgment."); Foley v. City of Lowell, Mass., 948 F.2d 10, 17 (1st Cir. 1991) (Accordingly, the plaintiff was presumptively entitled to prejudgment interest on the verdict against the City from the date of suit (November 27, 1985) until the date of final judgment below (December 6, 1990)."); Dishman v. UNUM Life Ins. Co. Of America, 269 F.3d 974, 991 (9th Cir. 2001) ("A final, appealable judgment is a clear dividing line; either one exists, or one does not.").

The reasoning underlying the Ninth Circuit's holding in Dishman is persuasive:

> If plaintiffs want postjudgment interest to start, or defendants want prejudgment interest to stop, they will likely take action to ensure that the judgment is final. A clear rule invites vigilance, while an unclear rule like that which the Sixth Circuit has adopted invites confusion and further litigation. Thus, we hold that 'judgment' within the meaning of 28 U.S.C. § 1961 means 'final, appealable order'…

Dishman v. UNUM Life Ins., 269 F.3d at 991. A more recent Sixth Circuit opinion also indicates a change in that court's approach to postjudgment interest.

> Because the prejudgment-interest rate on all of the claims is substantially higher than the postjudgment-interest rate, the district court's decision to start postjudgment interest from the May 16, 2002 judgment on the jury verdict grants an unjustified benefit to Central as the losing party. This equitable imbalance could have been avoided if the district court had ruled that postjudgment interest did not begin until the September 22, 2003 final amended judgment.

Scotts Co. v. Central Garden & Pet Co., 403 F.3d 781, 793 (6th Cir. 2005). The majority view is persuasive: a final, appealable order must be in place before prejudgment interest ceases and postjudgment interest begins.

Analysis does not end there for purposes of this case. Moran Foods argues that although it was successful on its breach of contract claims, a final judgment was never entered in its favor. Not until the court of appeals' decision reversing the jury verdict and ordering judgment in Moran Foods' favor was it finally entitled to judgment. And Moran Foods still will not have an opportunity to enforce or collect on the judgment until this court enters a final monetary award. Therefore, Moran Foods argues, prejudgment interest accrues until the moment that this court enters a monetary judgment.

In Kaiser Aluminum & Chemical Corp. v. Bonjorno, 494 U.S. 827 (1990), the district court directed a verdict for Kaiser at the first trial; that ruling was reversed on appeal. 494 U.S. at 829. The second trial resulted in a jury verdict in Bonjorno's favor in the trebled amount of $5,445,000. The district court held that the evidence did not support the jury's damages award and granted Kaiser's

6

motion for a new trial on damages. 494 U.S. at 830. The limited retrial resulted in a jury award in the trebled amount of $9,567,939. Id. Well after judgment was entered, the district court granted Kaiser's motion for judgment notwithstanding the verdict as to a portion of the damages awarded by the jury. Bonjorno appealed the reduction in damages and the court of appeals reversed the partial grant of judgment notwithstanding the verdict as to damages. Id. Asked to decide when postjudgment interest commenced, the Supreme Court held that postjudgment interest may not be calculated from a judgment on damages that was not supported by the evidence. 494 U.S. at 836. The court held that postjudgment interest began to accrue from the date of judgment on the limited retrial despite the erroneous grant of partial judgment notwithstanding the verdict. Id.

The First Circuit interpreted the holding in Kaiser Aluminum v. Bonjorno, to mean that

> where a first judgment lacks an evidentiary or legal basis, post-judgment interest accrues from the date of the second judgment; where the original judgment is basically sound but is modified on remand, post-judgment interest accrues from the date of the first judgment.

Cordero v. De Jesus-Mendez, 922 F.2d 11, 16 (1st Cir. 1990). The Eleventh Circuit also followed this analysis and stated:

> Where the initial judgment is supported by the evidence and the later judgment merely reflects a remittitur of a certain portion of that judgment as excessive, the courts of appeals have routinely decided that damages were sufficiently 'ascertained' at the time of the first judgment and that post-judgment interest should run from the date of the original judgment.

7

Johansen v. Combustion Engineering, Inc., 170 F.3d 1320, 1339-1340 (11th Cir. 1999).

Since the court denied Moran Foods' motion to enter a final judgment after the summary judgment order, the court's opinion on post-trial motions was the first time that a final, appealable order with ascertainable monetary damages was entered. That ruling, though, stated the breach of contract claims by Moran Foods and Mid-Atlantic resulted in a complete setoff and awarded monetary damages only to Susan Camp on her ECOA claim. The Seventh Circuit found that there was no evidentiary support for the jury to find a setoff and overturned the ECOA award. Today's order, then, will be the first final, appealable judgment not completely reversed where monetary damages are awarded to Moran Foods. This is distinguishable from the situation presented in C.R. Bard, Inc. v. M3 Systems, Inc., 120 F.Supp.2d 1145, 1150 (N.D. Ill. 2000), where the court found that the evidence was sufficient to sustain the verdict, affirmed liability on one count, and vacated the damages award to see if it could be segregated. Since there was no trouble discerning what portion of the damage award was attributable to the count affirmed on appeal, the court found that interest should accrue from the first judgment. Id. In our case, though, the setoff and the ECOA claim were vacated for lack of evidentiary support, so the prejudgment interest continues to run until today.

For the reasons stated above, Moran Foods is entitled to a judgment of $1,297,094.30, plus prejudgment interest at the contractual rate of 22% per

8

annum beginning April 3, 2000 and ending on the date of this judgment plus postjudgment interest thereafter.[1]

    SO ORDERED

    ENTERED:    June 6, 2007

    /s/ Robert L. Miller, Jr.
Chief Judge
United States District Court

---

[1] In their Reply in Support of Motion for Entry of Judgment, Moran Foods argues that the court's determination that Moran Foods judgment was worth $3,006,314 as of the date of trial is the law in this case, so interest should be awarded on that amount after January 31, 2005. Since this argument was first raised on reply and not in the original motion to amend judgment, the court will not address that issue.